IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| CHALLES LOFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-05107-MDH |
| | ) | |
| HOTS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, FOR ORDER**
**LIMITING DISCOVERY PENDING EVIDENTIARY HEARING**

Defendants Hots, Inc. d/b/a Hot's Gentleman's Club ("HGC"), Anthony Frank Catroppa, Sr. ("Tony Catroppa"), and Kimberly Mills ("Mills") (collectively, "the HGC Parties"), in support of their contemporaneously-filed *Motion to Compel Arbitration or, in the Alternative, for Order Limiting Discovery Pending Evidentiary Hearing* (ECF No. 13), suggest:

**I.  BACKGROUND & OVERVIEW**

In this action Plaintiff Challes Lofton ("Lofton") has asserted individual claims for violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), and the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 209.500, *et seq.* (the "MMWL"), and has indicated her intention to request the Court's permission to represent a class of similarly situated persons in those claims. Lofton alleges that she was an entertainer at HGC from approximately December 2016 to October 2019, and that HGC (and its owner and manager) failed to pay her minimum wage and overtime compensation, and confiscated her earnings through fees, fines, and tip-sharing requirements.

1

Lofton's relationship with HGC was governed by a *Lease and Independent Contractor Agreement* ("Agreement") she signed prior to performing work as an entertainer at HGC, and her claims are subject to an arbitration provision contained in that Agreement. However, Lofton's Agreement, and those of the other HGC entertainers, were stolen from HGC by Ricky C. Catroppa ("Rick Catroppa") – Tony Catroppa's son and the long-time manager of HGC (including during the vast majority of the period at issue in Lofton's claims). Those Agreements have either been destroyed or are being held by Rick Catroppa in a misguided effort to ensure that this lawsuit could be brought by entertainers that he solicited, and attorneys that he engaged, as payback against his father, Tony Catroppa, for perceived slights primarily related to Rick Catroppa's termination from HGC.

There exists direct evidence of both the existence and contents of the Agreement signed by Lofton, including non-party witnesses that personally observed Lofton sign the Agreement. There exists direct evidence, in the form of an eye-witness account, that Rick Catroppa stole the Agreements from HGC for the express purpose of getting retribution against Tony Catroppa and either "own [HGC] or at least shut it down." And there exists direct evidence, in the form of text messages from Rick Catroppa, that the Agreements are being hidden away in an effort to ensure that this putative collective-action litigation, filed on behalf of Lofton by attorneys that Rick Catroppa engaged, could proceed in federal court.

Lofton's claims should be compelled to arbitration in accordance with the Agreement that she signed, and this action should be dismissed.

II.     **APPLICABLE FAA PRINCIPLES**

Through the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Congress has established a "strong national policy favoring the enforcement of arbitration agreements." *See Shearson/Am.*

*Exp., Inc. v. McMahon*, 482 U.S. 220, 224 (1987). "Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists and the dispute falls within the scope of that agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). "The [FAA] preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). "The Supreme Court has established that an arbitral forum is, as a general matter, adequate to preserve statutory rights and adjudicate statutory claims." *Id.* (citing *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 89-90 (2000)). An agreement to arbitrate FLSA claims, including an agreement containing a class or collective action waiver, is enforceable. *See Owen v. Bristol Care, Inc.* 702 F.3d 1050, 1054 (8th Cir. 2013).

The Eighth Circuit has "made clear that when review an arbitration clause, [a court asks] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *See Faber*, 367 F.3d at 1052. "The primary inquiry, therefore, is to determine whether the parties formed a valid contract that binds them to arbitrate their dispute." *Shockley*, 929 F.3d at 1017. In order to determine whether there is a valid agreement to arbitrate, courts employ traditional principles of state contract law. *See* 9 U.S.C. § 2; *Bank of Am., N.A. v. UMB Fin. Servs., Inc.* 618 F.3d 906, 912 (8th Cir. 2010) ("State contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants….").

### III. THE EXISTENCE AND CONTENTS OF THE PARTIES' LOST ARBITRATION AGREEMENT IS PROPERLY PROVEN BY EXTRINSIC EVIDENCE

Federal courts called upon to determine whether the existence and content of a lost or destroyed agreement to arbitrate can be proved by secondary evidence "apply ordinary state-law principles that govern the formation of contract," including "as it pertains to lost or missing

instruments… relevant in determining whether an agreement to arbitrate exists between the parties." *See Hill v. Employee Res. Grp., LLC*, 816 F. App'x 804, 808 (4th Cir. 2020), *as amended* (June 12, 2020).

Under Missouri law, while "[t]he terms of a document must generally be proven by production of the original of that document," extrinsic evidence "may be admitted if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible." *See Nichols v. Mama Stuffeati's*, 965 S.W.2d 171, 174 (Mo. App. W.D. 1997), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). Secondary evidence of the existence of a written instrument requires only the production of "a witness who has seen or read the instrument, or is otherwise enabled to speak with some degree of accuracy as to its contents, and identify it as the one executed by the party to be charged where that is disputed." *See City of Brunswick ex rel. Barkwell v. Scott*, 275 S.W. 994, 995 (Mo. App. 1924).

Missouri law permitting proof of the existence and contents of a written instrument is in accord with Federal Rule of Evidence 1004, which provides, in pertinent part:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a)  all the originals are lost or destroyed, and not by the proponent acting in bad faith; [or]
>
> (b)  an original cannot be obtained by any available judicial process[.]

*See* Fed. R. Evid. 1004.

Federal courts routinely compel arbitration of a dispute where there is secondary evidence in the form of affidavits or testimony that the plaintiff signed an arbitration agreement that has been lost or destroyed, and the contents of that agreement. *See, e.g.*, *McCants v.*

*CitiFinancial Servicing, LLC*, No. CV 16-00283-WS-C, 2017 WL 5473744, at *5 (S.D. Ala. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1323201 (S.D. Ala. Apr. 5, 2017); *Pegasus Int'l Inc. v. Champagne*, No. CIV. 6:11-1402, 2012 WL 5616095, at *5 (W.D. La. May 11, 2012), *report and recommendation adopted*, 2012 WL 5818217 (W.D. La. Nov. 15, 2012); *Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 861 (S.D. Tex. 2011); *Anglin v. Tower Loan of Mississippi, Inc.*, 635 F. Supp. 2d 523, 525 (S.D. Miss. 2009); *Banks v. Mitsubishi Motors Credit of Am. Inc.*, 156 F. App'x 710, 712 (5th Cir. 2005); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 81 F. Suppl 2d 227, 231 (D. Mass 2000), *aff'd*, 248 F.3d 1 (1st Cir. 2001).

While it appears that neither Missouri courts nor courts within the Eighth Circuit have yet had the opportunity to determine whether, under Missouri law, arbitration is properly compelled where the agreement containing the arbitration provision has been lost, courts in another circuit have. In *Johnson v. Long John Silver's Restaurants, Inc.*, the Sixth Circuit, applying Missouri law, affirmed a district court's order compelling arbitration despite defendant-company being "unable to produce a signed arbitration agreement" because the company had lost the plaintiff's file. *See* 414 F.3d 583, 584 (6th Cir. 2005) (applying Missouri law).

### A. Lofton's Signed Agreement Existed

In this case, the evidence before the Court clearly demonstrates that Lofton signed the Agreement containing the arbitration provision.

First, the evidence establishes that in order to perform at HGC, an entertainer is required to sign the Agreement containing the arbitration provision prior to being permitted to perform at HGC or to affirmatively elect to be an employee. *See, e.g.*, Exhibit 1 (Declaration of Tony Catroppa) at ¶ 4-7; Exhibit 2 (Declaration of Kimberly Mills) at ¶ 7-8; Exhibit 3 (Declaration of Bridget Tidwell) at ¶ 6. No entertainer has ever elected to be an employee at a set hourly wage

5

WA 15989466.1
Case 3:20-cv-05107-MDH   Document 14   Filed 12/31/20   Page 5 of 11

and forfeit to HGC the money paid to them directly by customers. *See* Exhibit 1 (Declaration of Tony Catroppa) at ¶ 6; Exhibit 2 (Declaration of Kimberly Mills) at ¶ 7-8; Exhibit 3 (Declaration of Bridget Tidwell) at ¶ 6. Moreover, Lofton did not, in fact, treat the money she was paid directly by customers as property of HGC and, instead, kept that money for herself. *See* Exhibit 2 (Declaration of Kimberly Mills) at ¶ 11; Exhibit 3 (Declaration of Bridget Tidwell) at ¶ 10; Exhibit 4 (Declaration of Christina Dobson) at ¶ 8; Exhibit 5 (Declaration of Lauren Conger) at ¶ 8; Exhibit 6 (Declaration of Jennifer Brasuell) at ¶ 8.

Second, **three non-party witnesses personally witnessed Lofton sign the Agreement containing the arbitration provision**. *See* Exhibit 3 (Declaration of Bridget Tidwell) at ¶ 10; Exhibit 4 (Declaration of Christina Dobson) at ¶ 8; Exhibit 5 (Declaration of Lauren Conger) at ¶ 8.

### B. Lofton's Signed Agreement has been Lost

Lofton's Agreement has been lost due to no bad faith on the part of the HGC Parties. Rick Catroppa, removed Lofton's Agreement, along with those of all other entertainers, from the HGC premises, and took them to his personal residence, which was witnessed by no less than two non-party witnesses. *See* Exhibit 3 (Declaration of Bridget Tidwell) at ¶ 8; Exhibit 9 (Declaration of Eric Howard) at ¶ 5. Rick Catroppa disclosed to one witness that he intended to use his possession of the Agreements in connection with a lawsuit against the HGC Parties and that he would "own [HGC] or at least shut it down," to get back at Tony Catroppa. *See* Exhibit ** (Declaration of Eric Howard) at ¶ 5.

Subsequently, Rick Catroppa, engaged Hodges & Foty LLP (the same firm representing Lofton in this action) to represent his interests, and they sent a letter threatening a lawsuit if his demands were not met. *See* Exhibit 1-C; Exhibit 1-D. Despite Rick Catroppa having never

6

WA 15989466.1
Case 3:20-cv-05107-MDH   Document 14   Filed 12/31/20   Page 6 of 11

worked as an entertainer at HGC and him being the only person that served in his particular job for more than fifteen years, his attorneys' letters threatened to file a "class action" and touted the success of FLSA claims brought by entertainers against other clubs. *See id.* When his demands for money were not met, Rick Catroppa then made good on these threats and solicited entertainers – presumably including Lofton – to participate in this suit brought by his attorneys against the HGC Parties, in part, by assuring the entertainers that he (and not the HGC Parties) had possession of their Agreements containing the arbitration provision. *See* Exhibit 4 (Declaration of Christina Dobson) at ¶¶ 11-12.

Lofton's agreement to arbitrate disputes existed, and it has been lost due to the bad-faith of someone other than the HGC Parties. The mere fact that the HGC Parties cannot now produce the signed Agreement in connection with their Motion is no impediment to compelling Lofton to arbitrate her claims. *See, e.g.*, *Nichols*, 965 S.W.2d at 174; *Banks*, 156 F. App'x at 712.

## IV. THE ARBITRATION PROVISION OF THE AGREEMENT BETWEEN LOFTON AND HGC IS ENFORCEABLE, AND LOFTON'S CLAIMS ARE WITHIN THE SCOPE OF THE AGREEMENT

Under Missouri law, "[c]ourts examine arbitration agreements as they would any other contractual agreement, and the customary rules of state contract law and contract interpretation apply." *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 741 (Mo. banc 2017). "When construing an arbitration clause, courts must ascertain the intent of the parties and give effect to that intent." *Id.* "The parties' intent is presumably manifested in the plain, ordinary, and usual meaning of the contract's terms." *Id.* Missouri law requires only "(1) an offer, (2) acceptance, and (3) consideration to form a valid and enforceable contract." *Shockley*, 929 F.3d at 1017.

Here, the Agreement and the arbitration provision contained therein were offered to Lofton by HGC when it presented her with the Agreement, a fact supported by the eye-witness

accounts of multiple non-parties. Lofton accepted the Agreement and arbitration provision by signing the Agreement, a fact supported by that same evidence. Moreover, Lofton's conduct in the performance of her work, as attested to by additional non-party witnesses, was consistent the terms of the Agreement; *inter alia*, she, in fact, performed work as an entertainer at the HGC location, and she received payment directly from customers and treated that money as her own, not the property of HGC. Finally, the Agreement and the arbitration provision contained therein were each supported by consideration. Consideration sufficient to support a contract consists merely of "a promise to do something or refrain from doing something, or the transfer of something of value to the other party." *See Shockley*, 929 F.3d at 1017-18. Pertinent to enforcement of the arbitration provision, each party agreed to, at a minimum, refrain from filing suit in court and to, instead, seek redress for all disputes arising between them to arbitration as their "exclusive legal remedy." *See* Exhibit 1-A (Agreement) at ¶ 17.a. and c. Accordingly, the arbitration provision contained in the Agreement is a valid and enforceable agreement.

Lofton's claims asserted in this action are expressly within the scope of the arbitration provision of the Agreement. Lofton's Complaint contains five putative causes of action: (1) failure to pay minimum wages under the FLSA, (2) failure to pay overtime under the FLSA, (3) unlawful tip sharing under the FLSA, (4) failure to pay minimum wage and overtime under the MMWL, and (5) unjust enrichment. The arbitration provision states, in pertinent part:

> b. Claims covered by this [Agreement] include, but are not limited to, **claims for wages or other compensation**; claims for breach of contract or covenant, express or implied; **tort claims**; and **claims for violations of any federal, state, local, or other governmental constitution, statute, ordinance, regulation, or public policy, including but not limited to the Fair Labor Standards Act of 1938, as amended, or the MISSOURI Minimum Wage Act**. This [Agreement] also covers all claims regarding the arbitrability of claims and the enforceability and or validity of this [Agreement].

*See* Exhibit 1-A (Agreement) at ¶ 17.b. (emphasis added). Each of the legal theories presented by Lofton are **expressly** included in the arbitration provision of the Agreement.

Moreover, however, the arbitration provision further provides that:

> a. Except as otherwise provided in this [Agreement], Entertainer and [HGC] consent to the resolution of all claims or controversies between Entertainer and [HGC], by binding arbitration, for which a federal or state court or other dispute resolving body otherwise would be authorized to grant relief, **whether arising out of, relating to, or associated with Entertainer's relationship with [HGC], whether sounding in contract, statute, tort, fraud, misrepresentation, or any other legal theory** that Entertainer may have against [HGC] or that [HGC] may have against the Entertainer ("a Dispute");

*See id.* at ¶ 17.a. (emphasis added). Thus, the Agreement brings within the proper scope of arbitration all claims arising out of or relating to Lofton's relationship with HGC, and that relationship is, unquestionably, at the heart of her Complaint. Lofton alleges that the HGC Parties "misclassified dancers, including [her], as independent contractors," and it is this alleged mischaracterization of the relationship between them that "[HGC] paid no wages," "required [Lofton] to pay a 'stage fee' in order work in [HGC]," and were "required to share their tips." *See* Lofton's Complaint (ECF No. 1) at ¶ 2. And these allegations, which arise out of and relate to the relationship between Lofton and HGC, underlie each of her putative causes of action.

## V. CONCLUSION

Lofton and HGC entered into an Agreement containing an arbitration provision. Rick Catroppa – an individual associated with Lofton and her counsel – in an express effort to cause or allow this lawsuit to be filed against the HGC Parties as payback for what he perceived to be mistreatment of him by the HGC Parties, stole Lofton's Agreement and the Agreements of the other entertainers. Despite Lofton's Agreement having been lost to HGC by the conduct of Rick Catroppa, either acting alone or in concert with others, the existence and content of the Agreement is clearly and convincingly demonstrated by the sworn statements of the HGC Parties

and non-parties alike. The Agreement and the arbitration provision contained therein are valid and enforceable under Missouri law, and the claims of Lofton asserted in this action are squarely within the scope of the arbitration provision. Lofton's claims should be compelled to arbitration, and this lawsuit should be dismissed.

WHEREFORE, Defendants Hots, Inc. d/b/a Hot's Gentleman's Club, Anthony Frank Catroppa, Sr., and Kimberly Mills, respectfully request the Court enter its order (1) compelling this action to arbitration in compliance with the *Lease and Independent Contractor Agreement* signed by Lofton, or, in the alternative, (2) permitting immediate discovery limited to the issues of the existence and content of such Agreement between Lofton and HGC and staying all other discovery or proceedings, pending an evidentiary hearing on the HGC Parties' Motion, and (3) granting the HGC Parties such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

/s/     *Derek A. Ankrom*
| | |
|---|---|
| Jason C. Smith | Mo. Bar No. 57657 |
| Derek A. Ankrom | Mo. Bar No. 63689 |
| Tara A. Bailes | Mo. Bar No. 67936 |

**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Mo. 65804
Telephone:  417-888-1000
Facsimile:   417-881-8035
jcsmith@spencerfane.com
dankrom@spencerfane.com
tbailes@spencerfane.com
***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this 31st day December, 2020, that the foregoing instrument was filed with the Court's CM/ECF system, which sent notice of filing to:

Jack D. McInnes
MCINNES LAW LLC
jack@mcinness-law.com

    *and*

David W. Hodges & Tina E. Gutierrez
HODGES AND FOTY, L.L.P.
dhodges@hftrialfirm.com
tgutierrez@hftrialfirm.com

*Attorneys for Plaintiff*

                                                      /s/     *Derek A. Ankrom*