IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CHALLES LOFTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-05107-MDH |
| | ) |
| HOTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Hots, Inc. d/b/a Hot's Gentleman's Club's ("HGC"), Anthony Frank Catroppa, Sr.'s ("Tony Catroppa"), and Kimberly Mills' ("Mills") (collectively, "the HGC Parties") Motion to Compel Arbitration. (Doc. 13). For the reasons set forth herein, the Motion is **GRANTED**.

## BACKGROUND

In this action Plaintiff Challes Lofton ("Lofton") has asserted individual claims for violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), and the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 209.500, *et seq.* (the "MMWL"), and has indicated her intention to request the Court's permission to represent a class of similarly situated persons in those claims. Lofton alleges that she was an entertainer at HGC from approximately December 2016 to October 2019, and that HGC (and its owner and manager) failed to pay her minimum wage and overtime compensation, and confiscated her earnings through fees, fines, and tip-sharing requirements.

Lofton's relationship with HGC was governed by a Lease and Independent Contractor Agreement ("Agreement") she signed prior to performing work as an entertainer at HGC, and her

1

claims are subject to an arbitration provision contained in that Agreement. While the Agreement was missing at the time the instant Motion was filed, the Court granted discovery on the issue of whether Plaintiff signed the Agreement on March 25, 2021. On July 29, 2021, the parties stipulated that a copy of the Agreement was produced in a deposition. (Docs. 52, 52-1).

## STANDARD

A party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986). The validity of an arbitration agreement is determined by reference to state law. *See Perry v. Thomas,* 482 U.S. 483, 493-94 n. 9 (1987). Because Plaintiff worked for Defendant in Missouri and resided in Missouri, Missouri law controls the validity of Defendant's arbitration agreement. Under Missouri law, the Court must engage in a three-step process, deciding: 1) whether a valid contract exists; 2) whether the specific dispute falls within the scope of the arbitration agreement; and 3) the court must then determine if the agreement is subject to revocation based upon contract principles, such as whether it is procedurally or substantively unconscionable. *Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 736 (Mo. App. W.D. 2011), citing *Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006). The court uses normal state law contract principles in deciding those issues. *Id.*

## DISCUSSION

1. **The arbitration provision of the agreement between Lofton and HGC is enforceable, and Lofton's claims are within the scope of the agreement.**

Lofton's claims asserted in this action are expressly within the scope of the arbitration provision of the Agreement. Lofton's Complaint contains five putative causes of action: (1) failure to pay minimum wages under the FLSA, (2) failure to pay overtime under the FLSA, (3) unlawful

2

Case 3:20-cv-05107-MDH    Document 53    Filed 08/05/21    Page 2 of 6

tip sharing under the FLSA, (4) failure to pay minimum wage and overtime under the MMWL, and (5) unjust enrichment. The arbitration provision states, in pertinent part:

> b. Claims covered by this [Agreement] include, but are not limited to, claims for wages or other compensation; claims for breach of contract or covenant, express or implied; tort claims; and claims for violations of any federal, state, local, or other governmental constitution, statute, ordinance, regulation, or public policy, including but not limited to the Fair Labor Standards Act of 1938, as amended, or the MISSOURI Minimum Wage Act. This [Agreement] also covers all claims regarding the arbitrability of claims and the enforceability and or validity of this [Agreement].

(Doc. 52-1). Moreover, however, the arbitration provision further provides that:

> a. Except as otherwise provided in this [Agreement], Entertainer and [HGC] consent to the resolution of all claims or controversies between Entertainer and [HGC], by binding arbitration, for which a federal or state court or other dispute resolving body otherwise would be authorized to grant relief, whether arising out of, relating to, or associated with Entertainer's relationship with [HGC], whether sounding in contract, statute, tort, fraud, misrepresentation, or any other legal theory that Entertainer may have against [HGC] or that [HGC] may have against the Entertainer ("a Dispute").

*Id*.

In conclusion, the Agreement brings within the proper scope of arbitration all claims arising out of or relating to Lofton's relationship with HGC, and that relationship is at the heart of her Complaint. Lofton alleges that the HGC Parties "misclassified dancers, including [her], as independent contractors," and it is this alleged mischaracterization of the relationship between them that "[HGC] paid no wages," "required [Lofton] to pay a 'stage fee' in order work in [HGC]," and were "required to share their tips." *See* Complaint (Doc. 1 at ¶ 2). And these allegations, which arise out of and relate to the relationship between Lofton and HGC, underlie each of her putative causes of action.

2. **Lofton's FLSA claims are subject to arbitration.**

Plaintiff argues that the Agreement is unenforceable because it waives her substantive rights under the FLSA. Specifically, Lofton asserts that the Agreement is illegal because it seeks

3

to waive her substantive right under the FLSA to recover attorneys' fees and costs and instead requires Plaintiff to pay attorneys' fees and costs. (*See* Doc. 13-2 at 11 (providing that each party bear its own costs and expenses in the arbitration)).

Plaintiff further argues that the Agreement is unconscionable because it purports to waive Plaintiff's rights under the FLSA. Specifically, Lofton argus the Agreement hinders her right to recover unpaid wages by requiring Plaintiff to pay Defendants all Entertainment Fees earned by Plaintiff if it is found that Plaintiff is an employee rather than an independent contractor. (*See* Doc. 13-2 at 8).

Ultimately, Lofton's challenges are to the enforceability of the Agreement as a whole, which is for the arbitrator, not the Court, to decide. There are two types of validity challenges under § 2 of the FAA. One type challenges specifically the validity of the agreement to arbitrate, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. *See Fambrough v. Green*, No. 4:19-cv-00158-RK, 2019 WL 4724302, at *2 (W.D. Mo. Sept. 26, 2019) (quoting *Rent-A-Center*, 561 U.S. at 68-69). "Only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* "This is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* (emphasis in original). "Therefore, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* (cleaned up). "Accordingly, unless a party challenges the delegation provision specifically, courts must treat it

4

as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the agreement as a whole for the arbitrator." *Id.* (cleaned up).

In Section 17.a. of the Agreement, the parties "consent to the resolution of all claims or controversies between Entertainer and HOTS, by binding arbitration, for which a federal or state court or other dispute resolving body otherwise would be authorized to grant relief…." *See* Exhibit 1-A, § 17.a. Further, the parties "agree[d] they will submit a Dispute or Disputes to final and binding arbitration, as governed by the Federal Arbitration Act and the rules of the AAA." *See id.*, § 17.i. In addition to listing her FLSA and Missouri Minimum Wage Law claims expressly, the Agreement further provides for arbitration of "all claims regarding the arbitrability of claims and the enforceability and or validity of this [Agreement]." *See id.*, § 17.b. Lofton does not challenge the parties' delegation of disputes, including the threshold issue of arbitrability, to arbitration.

In this case, two of the provisions of the Agreement that Lofton challenges are contained in Section 16, titled "Indemnification," and Section 11, titled "Business Relationship of the Parties." *See id.*, pp. 5 and 9. Lofton's challenges to Section 16 and Section 11 of the Agreement are clearly challenges to the enforceability of substantive provisions of the Agreement, not the parties' delegation of disputes to arbitration. As such, "the Court must… enforce the delegation provision's terms and leave [Lofton's] challenges to the arbitrator for determination," because "the arbitrator has exclusive authority to resolve [Lofton's] challenges to the validity of the Agreement as a whole." *See Fambrough*, 2019 WL 4724302, at *3.

For example, in the case of *Womack v. Career Educ. Corp.*, No. 4:11-cv-1003-RWS, 2011 WL 6010912 (E.D. Mo. Dec. 2, 2011), the court explained that a challenge to the enforceability of an arbitration provision, as a whole, is insufficient to avoid arbitration of the issue of arbitrability. In that case, the plaintiff challenged the arbitration provision on the grounds that, *inter alia*, it

5

required the parties to split the arbitration costs and prohibited recovery of attorney's fees. *See id.* at *2. The court rejected these challenges as failing to "specifically challenge the provision of the agreement which allows the arbitrator to decide enforceability of the arbitration clause," because those arguments did not allege "that the delegation provision itself is unconscionable." *See id.* Accordingly, the court held that "issues concerning the enforceability of the arbitration agreement, including [the plaintiff's] unconscionability claim are for the arbitrator to decide." *See id.*

## CONCLUSION

Defendants' Motion to Compel Arbitration (Doc. 13) is hereby **GRANTED** and the parties are **ORDERED** to arbitrate their claims pursuant to the Agreement.

**IT IS SO ORDERED.**

Dated: August 5, 2021          /s/ Douglas Harpool
                               **DOUGLAS HARPOOL**
                               **United States District Judge**